J-S10044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF M.J.A.      :      IN THE SUPERIOR COURT OF
     :          PENNSYLVANIA
     :
     :
APPEAL OF: T.J., BIOLOGICAL MOTHER    :       No. 2938 EDA 2014

Appeal from the Order September 12, 2014
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2014-A0036


IN RE: ADOPTION OF L.A.A.      :      IN THE SUPERIOR COURT OF
     :          PENNSYLVANIA
     :
     :
APPEAL OF: T.J., BIOLOGICAL MOTHER    :       No. 2939 EDA 2014

Appeal from the Order September 12, 2014
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2014-A0037


BEFORE:  GANTMAN, P.J., STABILE, J., AND PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:        **FILED FEBRUARY 11, 2015**

Appellant, T.J. ("Mother"), appeals from the orders entered in the Montgomery County Court of Common Pleas Orphans' Court, which granted the petition of Appellees, D.J. and T.J.J. for involuntary termination of Mother's parental rights as to her minor children, M.J.A. and L.A.A. ("Children").[1]  We affirm.

---

[1] Children's birth father is not a party to this appeal.  He voluntarily relinquished his parental rights to Children at the termination hearing on September 11, 2014.

_____

*Retired Senior Judge assigned to the Superior Court.

The relevant facts of this case are as follows. Children were born in 2008 and 2009. Since June 2010, they have lived exclusively with Appellees, Mother's uncle and aunt, under an agreement with Mother giving them sole legal and physical custody of Children. Mother has a history of hard drug abuse, primarily heroin, since the age of twelve. Mother has been incarcerated repeatedly in 2010, 2011, 2013, and 2014. For the last two and one-half years, Mother spent a total of eight hours of supervised visitation with Children. Mother provided no housing or financial support for Children during this entire time.

Procedurally, on March 17, 2014, Appellees filed petitions for involuntary termination of Mother and birth father's parental rights, based on 23 Pa.C.S.A. 2511(a)(1)-(2) and (b). On September 11, 2014, the court held a termination hearing. Following the hearing, on September 12, 2014, the court granted the petitions and terminated Mother's parental rights per Sections 2511(a)(1)-(2) and (b). Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2(ii).

Mother raises the following issues for our review:

> DID THE TRIAL COURT COMMIT ERROR IN TERMINATING
> THE PARENTAL RIGHTS OF MOTHER, PURSUANT TO 23
> PA.C.S.A. [§] 2511(A)(1), WHERE THE TESTIMONY AT
> TRIAL DEMONSTRATED THAT MOTHER HAD MADE
> COURAGEOUS EFFORTS TO IMPROVE HERSELF AS A
> PERSON AND A PARENT AND AT NO POINT EVIDENCED A
> SETTLED PURPOSE OF RELINQUISHING HER PARENTAL

CLAIM OR FAILED OR REFUSED TO PERFORM PARENTAL DUTIES?

DID THE TRIAL COURT COMMIT ERROR IN TERMINATING THE PARENTAL RIGHTS OF MOTHER, PURSUANT TO 23 PA.C.S.A. [§] 2511(A)(2), WHERE THE TESTIMONY AT TRIAL DEMONSTRATED THAT MOTHER HAD MADE COURAGEOUS EFFORTS TO IMPROVE HERSELF AS A PERSON AND A PARENT AND THAT THE CAUSES OF ANY INCAPACITY ON THE PART OF MOTHER HAD BEEN, OR WERE IN THE PROCESS OF [BEING], REMEDIED?

DID THE TRIAL COURT [ERR] BY INVOLUNTARILY TERMINATING MOTHER'S PARENTAL RIGHTS WHERE THE FACTS DID NOT ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT SUCH TERMINATION WAS IN THE BEST INTERESTS OF THE CHILDREN AS CONTEMPLATED BY 23 PA.C.S.A. [§] 2511(B).

(Mother's Brief at 2).

Appellate review in termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en*

*banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Section 2512 governs who may bring a petition to terminate parental rights, and what the petition must contain, as follows:

### § 2512. Petition for involuntary termination

**(a) Who may file.**—A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing in *loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

(4) An attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S.A § 6341(c) (relating to adjudication).

**(b) Contents.**—The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights. The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted. If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.

*       *       *

23 Pa.C.S.A. § 2512. If the petitioner is not an agency, then the petition must include "an averment that an adoption is presently contemplated or that a person with a present intention to adopt exists." *In re Adoption of J.F.D.*, 782 A.2d 564, 567 (Pa.Super. 2001). In any event, the burden of proof remains with the petitioning party, who must establish valid grounds for termination by clear and convincing evidence. *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003).

Appellees sought termination of Mother's parental rights on the following grounds:

### § 2511. Grounds for involuntary termination

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)   The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

*   *   *

**(b)   Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1)-(2), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In re Z.P., supra*** at 1117.

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and

> convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of...her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Under Section 2511(b), the court must consider whether the child's needs and welfare will be met by termination. *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006).

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond.

*Id.* at 520 (internal citation omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have her parental rights terminated. *In re B.L.L.*, 787 A.2d 1007 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental

duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations and quotation marks omitted).

"[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

Regarding Mother's complaints on appeal, the Orphans' court reasoned as follows:

> Frankly, as I listen to this evidence, I really don't conclude that there were any obstacles placed in mother's path. I know she says she didn't feel welcome. I know she says that she wasn't encouraged. There's a difference between not feeling encouraged and having obstacles placed in your path. So I really don't think that that aspect of the law matters.
>
> \* \* \*
>
> I don't have any difficulty concluding that you have failed to perform parental duties as required by children of the ages of yours between the time of 2010 -- really from the time they were born up until the present. And these children are of tender years even now. I wrote down the exact, and I think it was 6.8 and 5.7 in months or something like that. That period of time up through age six is such a critical, critical, critical time. They are soaking everything up like a sponge, and they need so much help and guidance and direction, and all that stuff.
>
> The truth of the matter is you haven't really provided them anything. You may have wanted to, but between your drug addiction and everything else that's impacting you, you just didn't do it. So you did fail to do it, and there's certainly no other way to conclude that looking at the facts here.
>
> \* \* \*
>
> Now, what ought to be done under the circumstances (when you're a parent with a child of the ages your children are) is what is in their best interest. The lifestyle that you chose for yourself in those years was not in your children's best interest. The drugs took over your life, and it grossly affected your judgment, and it affected your ability to be a parent. That's what we mean by incapacity, and it's a continuing one. And then it says at the very end, "and will not be remedied." Now, it doesn't mean forever, but it does mean within a reasonable time.

What's a reasonable time? Reasonable is always determined by the circumstances and frequently by the ages of the children. So, again, I'm dealing with children who are five and six, closer to six and seven, and time is running out for them to receive the parental care that they need. …

\* \* \*

What does that incapacity consist of? By your admission, you've been abusing drugs since the age of 12. That would be 15 years. By your admission, six convictions, two inpatient programs, three outpatient programs, an AA program, an NA program that you didn't like or you didn't feel was doing you any good, and a drug court, which I am very familiar with because I've gone and watched those graduations. And I know that the very few people who get selected to go in it, who are very fortunate to be selected to go in it, get what's a very intensive supervision from their probation officers. You know it, too. You had much, much more strict and intense supervision than the normal person on probation and parole all designed because, hey, we think we can save this person. If we can get them through to graduation, we can turn their life around. …

I think of all these things, all these efforts that have been made on your behalf. I think about the schooling that you were offered, good private schooling….

\* \* \*

But I don't think that with what you have done in the first six and five years of your children's lives allows you to say somewhere, maybe in a couple years, I can be a mom, because here's what the law says about that: [i]f you meet the definitions in these sections, then the law says: [n]ow we look to what the best interests of the children are because we can't make them wait indefinitely. Their lives are being formed, being shaped. They are going to be adults. They are affected by that. They need an upbringing. The law says that if you do the things as we define them here and the Court determines that it's been proven by clear and convincing evidence, then, then your

- 10 -

> constitutional right no longer prevails, and now we're going to look at what is best for those kids.
>
> So I make that shift at this point, what's best for [Children]. So I look at everything I heard about [Appellees], and I credit your honesty on this, you acknowledge they've done a great job. Even if you hadn't, I know they've done a great job. That's a no-brainer. They didn't do it because they're making money out of this or because anybody is giving them an award somewhere, but whatever they do is because they obviously love parenting, and they obviously love your children, and…they do.
>
> \* \* \*
>
> So those are all my rationale, my findings of fact, my conclusions of law. I think grounds have been made out under [2511](a)(1) and (a)(2). I think it's both an incapacity and neglect under Section (a)(2). I think it's a failure to perform parental duties under (a)(1)….
>
> \* \* \*
>
> This matter will be listed for an adoption hearing—a final adoption hearing in the regular course after the appellate periods have run.

(N.T. Termination Hearing, 9/11/14, at 219-27). We accept the Orphans' court's reasoning. The record makes clear Mother has an entrenched drug problem that led her over many years to make poor choices in life, including multiple incarcerations, most recently in 2014. Mother willingly gave legal and physical custody of Children at a very early age to Appellees, who have served as Children's parents for over four years, meeting all parental obligations. Mother consistently failed to assume her parental duties such that Children believe Appellees are their real parents. The record contains

no evidence that severing any bond that might exist between Children and Mother would cause the Children adverse effects.  The record supports the Orphans' court's decision to terminate Mother's parental rights.  Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2015